**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Gideon Arrington, II,                                  Civ. No. 19-1377 (MJD/BRT)

          Petitioner,

v.                                                              **REPORT AND**
                                                                **RECOMMENDATION**
State of Minnesota,

          Respondent.

Petitioner Gideon Arrington, II, entered an *Alford* plea[1] in state court to one count of first-degree criminal sexual conduct. *See State v. Arrington* ("*Arrington I*"), No. A14-1945, 2016 WL 102476 (Minn. Ct. App. Jan. 11, 2016). On direct appeal, Arrington argued that the district court abused its discretion by imposing a 324-month term of imprisonment; that argument was rejected, and the conviction and sentence were affirmed. *Id.* Arrington then filed a petition for post-conviction relief in state court arguing that his *Alford* plea was not accurate (because the prosecution had assembled insufficient evidence pointing to his guilt), voluntary (because his attorney had coerced him into pleading guilty), or intelligent (because he did not know he might be sentenced to as much as 324 months in prison). The trial court rejected these arguments, the Minnesota Court of Appeals affirmed the denial of the post-conviction petition, and the

---

[1]    *See North Carolina v. Alford*, 400 U.S. 25 (1970).

Minnesota Supreme Court declined review. *See Arrington v. State* ("*Arrington II*"), No. A17-0695, 2018 WL 1247212 (Minn. Ct. App. Mar. 12, 2018).

Arrington then filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this District. (*See* Doc. No. 1, Pet.). The petition raises four grounds for relief, and each ground contains multiple discrete claims of error. Only two of those claims, however—that Arrington's *Alford* plea was invalid due to a lack of evidentiary basis for his guilt, and that Arrington's attorney provided ineffective assistance with respect to the entry of the *Alford* plea—have been fairly presented to the Minnesota state courts. The Minnesota Court of Appeals acted reasonably in rejecting both of these claims, which should be denied on the merits. The remainder of the claims, which have not been fairly presented to the state courts, have become procedurally defaulted and should be denied on that basis.

**I.     Analysis**

Arrington raises many claims in his federal habeas petition. With two exceptions, Arrington did not fairly present any of these claims to the Minnesota courts. Those exceptions are as follows: In his state-court petition for postconviction relief, Arrington argued that his *Alford* plea should not have been entered by the trial court because there was insufficient evidence upon which a juror could have found him guilty. The claim regarding the adequacy of the factual basis for the plea is directly presented in Ground Two of the habeas petition. (*See* Pet. 7 ("For an Alford plea to be accurate/valid strong factual evidence has to exist. Strong factual evidence did not exist.").). Arrington also argued in his state-court petition for postconviction relief that his attorney provided

ineffective assistance by coercing him into entering an *Alford* plea. *See Arrington II*, 2018 WL 1247212, at *4–5. Arrington did not expressly raise this specific ineffective-assistance claim in his federal habeas petition, but he did raise a generic claim of ineffective assistance of counsel. (*See* Pet. 10 ("Mr. Arrington's constitutional rights were violation when he did not have effective counsel, which violates the 6th Amendment").) That generic claim is broad enough to encompass the specific ineffective-assistance claim that was fairly presented to the state courts.

None of the other claims presented in Arrington's federal habeas petition—for example, that his attorney provided ineffective assistance by failing to investigate potential defenses; that the prosecutor committed misconduct by withholding exculpatory evidence and by pursuing a prosecution with insufficient evidentiary support; that his due-process rights were violated—were fairly presented to the Minnesota state courts. As explained below, the claims that have not been fairly presented should be denied on that basis.

### A.   Defaulted Claims

With limited exceptions, a federal district court may not review claims raised in a state prisoner's petition for a writ of habeas corpus unless the prisoner has exhausted state-court remedies for those claims. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The exhaustion requirement was summarized by the Supreme Court as follows:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. To

3

> provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations and quotation marks omitted). A claim is fairly presented "if the state court rules on the merits of [the petitioner's] claims, or if [the petitioner] presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999). Where the state courts expressly decline to address a claim on the merits because the petitioner violated state procedural rules, that claim cannot be deemed fairly presented. *Hall v. Delo*, 41 F.3d 1248, 1250 (8th Cir. 1994).

On direct appeal, Arrington raised a single claim for relief: that the trial court abused its discretion when it imposed a 324-month term of imprisonment.[2] *See Arrington I*, 2016 WL 102476, at *1–2. Arrington then filed a petition for post-conviction review, raising the two claims described above as well as a third claim—which does not appear to be raised in this proceeding—that Arrington was not aware of the potential consequences of entering an *Alford* plea (that is, his *Alford* plea was not intelligent). Those claims were rejected on the merits by the trial court. Arrington then sought appeal from the denial of those claims, but he also attempted to raise several additional claims on appeal from the denial of his petition for postconviction relief in state court, including many of the claims now repeated in his federal habeas petition. *See Arrington II*, 2018 WL 1247212, at *5. But by then it was too late. The Minnesota Court of Appeals refused

---

[2] Arrington has not renewed that claim in his federal habeas petition.

to consider any of Arrington's claims that had not been presented to the trial court and concluded that, in any event, each of the claims could have been raised on direct appeal rather than in a post-conviction petition. *Id.*

Minnesota law provides that all claims that could have been known but were not raised at the time of a petitioner's direct appeal are barred from consideration in a subsequent post-conviction proceeding. *See State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). The *Knaffla* bar is an independent state procedural rule that precludes future consideration in state court of the claims that have not yet been fairly presented to the state courts. The Minnesota Court of Appeals has determined that Arrington's federal habeas claims—again, with the exception of the two claims described above—cannot now be raised in the state courts on account of the *Knaffla* bar. Accordingly, those claims are now procedurally defaulted and cannot be raised in this proceeding, either.

Arrington does not dispute much of this analysis,[3] but he argues that his procedurally defaulted claims should nevertheless be considered on the merits despite the procedural default. "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or

---

[3]   Arrington contends that he attempted to raise before the trial court on post-conviction review his claim concerning what he regards as a "false" sexual-assault examination (*see* Doc. No. 14, Reply 5–6), but even on Arrington's telling, his attempts came too late under state law—the claim was or should have been known to Arrington at the time of his direct appeal and therefore should have been raised then. *Arrington II*, 2018 WL 1247212, at *5.

demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Arrington contends that he meets both of these exceptions — that is, he argues that he can demonstrate cause for the default and actual prejudice resulting from the default, and he argues that a failure to consider the defaulted claims on the merits would result in a fundamental miscarriage of justice.

Neither argument is compelling. Although Arrington asserts that he had cause for the procedural default, he never explains what that cause might have been. (*See* Reply 1.) As the Minnesota Court of Appeals noted in affirming the denial of his petition for post-conviction review, each of the claims Arrington seeks to raise now could have been raised at the time of his direct appeal. *Arrington II*, 2018 WL 1247212, at *5. Not only did Arrington forego that opportunity, but he also excluded those claims from the petition for postconviction review presented to the state trial court. Arrington offers no reason why he could not have been reasonably expected to proceed earlier on his claims in state court. There was no adequate cause for the default.

"Even if a federal habeas petitioner cannot show cause and prejudice, he may still be entitled to have his successive or abusive claims heard on their merits if he can show that failure to do so would result in a fundamental miscarriage of justice." *Washington v. Delo*, 51 F.3d 756, 760 (8th Cir. 1995). Arrington argues that he meets this fundamental-miscarriage exception to the usual rules regarding procedural default. "This is a narrow exception, however, reserved for extraordinary circumstances and explicitly tied to a petitioner's actual innocence." *Id*. at 760–61. Arrington has not come close to

establishing his actual innocence of the offense for which he was convicted; indeed, as discussed below with respect to his claim concerning the validity of his *Alford* plea, the evidence of Arrington's guilt was substantial. Despite his arguments concerning the alleged weakness of the state's case against him, Arrington has done little to call that evidence into question.[4]

No exception to the requirement of fair presentation of claims applies to Arrington's habeas petition. Accordingly, this Court will proceed to the merits only of the claims that have been fairly presented to the Minnesota courts. The remaining claims should be denied on the basis of procedural default.

### B.     Exhausted Claims

#### 1.     Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's substantive review of Arrington's exhausted habeas claims. The relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

---

[4]   Arrington's arguments regarding the falsity of the evidence arrayed against him are almost entirely conclusory; never does Arrington explain in the documents submitted by him to this Court *why* he believes any of the evidence that the state had prepared to use against him was false. The documents submitted by Arrington in state court are only marginally more detailed, and the "false" evidence cited in those documents appear to be only the usual minor inconsistencies or lack of detail common to evidence used in almost all criminal proceedings. (*See* Doc. No. 13-1, Resp. Ex. 271–74.)

7

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed § 2254(d)(1) and how it should be applied by federal district courts. The Supreme Court recognized that

> a state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Id.* at 405.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The Supreme Court also explained that

> [a] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 411.

A writ of habeas corpus may also be available where the state court's resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the conviction is based on findings of fact that could not reasonably be derived from the state court evidentiary record. When reviewing a state court decision, however, "a federal court . . . presumes that the state court's factual determinations are correct; this presumption may be rebutted only by clear and convincing evidence." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir .2000). In addition, 28 U.S.C. § 2254(e)(1) provides that

> [i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

"AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and quotations omitted). Habeas relief cannot be granted unless the petitioner has identified and substantiated a specific error committed by the state courts. Moreover, the petitioner must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court. Finally, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

9

### 2. Alford Plea

In Ground Two of his habeas petition, Arrington claims (in relevant part) that "[f]or an *Alford* plea to be accurate/valid strong factual evidence has to exist. Strong factual evidence did not exist." (Pet. 7.) This Court interprets Arrington as arguing that his *Alford* plea is invalid on account of the lack of a factual basis for his guilt and therefore must be vacated.

"[T]he factual basis requirement rests in Fed. R. Crim. P. 11(f), not the Constitution." *Wabasha v. Solem*, 694 F.2d 155, 157 (8th Cir. 1982). Usually, then, "[t]he requirement that there be a factual basis for a plea . . . is non-cognizable in a federal habeas action." *Wilson v. Redington*, No. 4:18-CV-0932 (JAR), 2020 WL 569885, at *2 (E.D. Mo. Feb. 4, 2020); *cf.* 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); 28 U.S.C. § 2241(c)(3). That said, "establishment of a factual basis *may* be constitutionally required when the guilty plea is accompanied by claims of actual innocence," as when a defendant enters an *Alford* plea. *Wilson*, 2020 WL 569885, at *2 (emphasis added) (citing *Wabasha*, 694 F.2d at 157).

This uncertainty regarding the validity of Arrington's claim—never has the Supreme Court stated in a way that leaves no room for fairminded disagreement that an adequate factual basis is constitutionally required for an *Alford* plea—largely undercuts Arrington's claim. *See* 28 U.S.C. § 2254(d)(1) (requiring that a habeas petition not be granted unless the state-court adjudication of the claim "resulted in a decision that was

10

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ."). But Arrington faces a still more straightforward barrier to relief: His argument that the prosecution lacked a sufficient factual basis upon which to convict him of first-degree sexual assault is meritless. As accurately summarized by the Minnesota Court of Appeals, "[t]he state made an offer of proof spanning nearly 15 pages of transcript, including anticipated testimony of an eyewitness who saw the abduction, a detailed recounting of the sexual assault by the victim, and DNA evidence matching Arrington's profile." *Arrington II*, 2018 WL 1247212, at *4. (*cf.* Doc. No. 7, Plea Tr. 16–28.) Moreover, "[a]fter hearing the state's case on the record, Arrington agreed there was sufficient evidence to establish a substantial likelihood that he would be convicted by the jury at trial." *Id*. Arrington himself recognized at the time of his *Alford* plea that the evidence arrayed against him was daunting, and representations made by a defendant at a plea hearing "carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Arrington's present challenge to this evidence largely amounts to nitpicking.[5] (*See* Doc. No. 3, Pet. Ex. 36–98.) At most, Arrington provides a basis from which a juror

---

[5] For example, Arrington provides a handwritten annotation of the victim's medical report following the assault. (*See* Doc. No. 3, Pet. Ex. 83–88.) Arrington contests the authenticity of the report as a whole, but he offers no specific reason to believe that the report presented by the state is not a true copy of the report prepared following the assault. Arrington also contests several statements made within the report, but most of these rebuttals are wholly conclusory—there is no reason to believe that Arrington's

11

might have concluded that he was not proven guilty of the offense had the matter been brought to trial and had all possible inferences been drawn by that juror in Arrington's favor. To say that a juror *could* have arrived at a finding of not guilty, though, is not to say that the evidence presented by the state was insufficient upon which to convict; a reasonable juror equally would have had more than enough evidence upon which to conclude that Arrington had committed first-degree criminal sexual conduct. Arrington understood at the time of his plea hearing that he had forfeited his opportunity to contest the substantial evidence that the prosecution was prepared to present. He cannot now back out of his *Alford* plea on the grounds that jurors may have lacked a factual basis upon which to find him guilty. This claim should therefore be denied.

### 3. Ineffective Assistance of Counsel

In Ground Four of his habeas petition, Arrington alleges that his "constitutional rights were violated when he did not have effective counsel, which violates the 6th Amendment." (Pet. 10.) This allegation is broad enough to encompass several potential claims of ineffective assistance of counsel. As explained above, however, Arrington has fairly presented to the state courts only one ineffective-assistance claim: that his attorney coerced him into entering an *Alford* plea. *See Arrington v. State*, 2018 WL 1247212, at *2–3.

---

version of events, rather than the version of events provided in the report by the victim, is true—and none of Arrington's rebuttals are so convincing that a reasonable juror would have acted unreasonably in relying upon the medical report as evidence of guilt. And the medical report represented only one brick in a formidable wall of evidence constructed by the prosecution. (*See* Doc. No. 7, Plea Tr. 16–28.)

To prevail on a claim of ineffective assistance of counsel, Arrington must show that his counsel's performance fell below an objective standard of reasonableness, *see Strickland v. Washington*, 466 U.S. 668, 687–88 (1984), and that there is a reasonable probability that, but for his counsel's errors, the result of his proceeding would have been different, *id*. at 694. "The first prong requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *White v. Dingle*, 757 F.3d 750, 752 (8th Cir. 2014) (quotations omitted). "The second prong requires a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 753 (quotations omitted). The two-prong *Strickland* test applies to claims of ineffective assistance at the plea stage. *See Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012). Arrington bears the burden of establishing both prongs. *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013) (objective-standard-of-reasonableness prong); *Becht v. United States*, 403 F.3d 541, 549 (8th Cir. 2005) (prejudice prong). "'Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim.'" *United States v. Kehoe*, 712 F.3d 1251, 1253 (8th Cir. 2013) (quoting *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011)).

Arrington alleges that during a private conference at the plea hearing, his attorney pressured him into entering an *Alford* plea because she was unprepared to go forward with trial. The trial court, and later the Minnesota Court of Appeals, rejected the claim on two grounds.

First, the courts found that the claim largely turned on the credibility of the two witnesses (Arrington and his attorney) subject to the private conversation at issue and that the attorney was substantially more credible in her testimony than Arrington at the post-conviction hearing. As explained by the Minnesota Court of Appeals,

> Arrington's attorney had been a public defender for over 10 years. She was ordered to prepare to try the case while serving as advisory counsel over a month before trial and had created her own trial notebook. On the day of trial, she confirmed that she was prepared and ready to proceed with a theory of the case. Reiterating her preparation at the postconviction evidentiary hearing, she testified that, although she would have liked additional time to look into the DNA evidence, Arrington wanted to proceed with the trial as scheduled and she was prepared to accommodate this request. Based on the record, Arrington's attorney was clearly prepared to try the case on schedule. She thus had no apparent motive to force a plea deal. Moreover, Arrington's attorney testified unequivocally that she never told Arrington the things he claimed.

*Arrington II*, 2018 WL 1247212, at *3. By contrast, the trial court concluded that Arrington's testimony—that his attorney had told him, among other things, that the system was "rigged" against him should he proceed to trial—was simply not credible. (*See* Doc. No. 13-1, Resp. Ex. 86–87 (district-court finding)); *Arrington II*, 2018 WL 1247212, at *3.

"The deference owed to the state trial court pursuant to § 2254(e)(1) includes deference to its credibility determinations. A federal court can only grant habeas relief if the state court's credibility determinations were objectively unreasonable based on the record." *See Smulls v. Roper*, 535 F.3d 853, 864 (8th Cir. 2008). Upon review of the testimony provided at the post-conviction evidentiary hearing and the other considerations set forth by the state courts, this Court concludes that the credibility

determination made by the state courts is reasonable. And as the Minnesota Court of Appeals recognized, if Arrington's testimony is discounted against the testimony of his attorney regarding the contents of their discussion, he cannot succeed on his ineffective-assistance claim.

Second, and relatedly, Arrington's claim of coercion was belied by the representations that he himself had made on the record when he entered his *Alford* plea. Again, the Minnesota Court of Appeals put the matter well: "At the plea hearing, Arrington testified that he was 'clearheaded' and making a 'knowing, voluntary and intelligent decision.' He specifically agreed he was not 'being forced into this plea because things went too fast' and confirmed that no one had made 'promises or threats' to him regarding the plea agreement." *Arrington*, 2018 WL 1247212, at *3. Not only do these representations call into doubt the credibility of Arrington's later testimony, but they also provide evidence separate from the testimony of his attorney that Arrington's *Alford* plea was entered with full volition.

In sum, Arrington has failed to meet his burden to show that the Minnesota Court of Appeals erred in determining that his attorney performed adequately.[6] Accordingly, the ineffective-assistance claim should be denied on the merits.

---

[6] Arrington argued at the state post-conviction hearing "that he was misled about the length of the sentence he would receive." *Arrington II*, 2018 WL 1247212, at *5. Again, however, Arrington's allegations were belied by the unequivocal representations he made on the record during his plea hearing. *Id.* It is not clear that Arrington is renewing this claim in his petition, but this Court observes that any claim that Arrington's attorney provided ineffective assistance of counsel by failing to provide adequate information regarding the consequences of his guilty is not viable in light of Arrington's statements at the plea hearing.

## II.     Conclusion

Each of Arrington's claims is either procedurally defaulted or without merit. Accordingly, this Court recommends that his habeas petition be denied and this action dismissed without prejudice. Only one matter merits further comment: A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, would treat Arrington's current habeas corpus petition differently than it is being treated here. Arrington has not identified, and this Court cannot discern, anything novel, noteworthy, or worrisome about this case that warrants appellate review. It is therefore recommended that Arrington should not be granted a COA in this matter.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The petition for a writ of habeas corpus of petitioner Gideon Arrington, II **(Doc. No. 1)** be **DENIED**;

2. This action be **DISMISSED WITH PREJUDICE**; and

3.       No certificate of appealability be issued.

Dated: March 24, 2020                         *s/ Becky R. Thorson*
                                              BECKY R. THORSON
                                              United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).